UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JULIA HAMPTON,                                      Docket No.07- CV- 1402
                                   Plaintiff,        (RPP)

            -against-                               **FIRST AMENDED**
                                                    **COMPLAINT**

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION,                                     **JURY TRIAL DEMANDED**

                                   Defendant.
-------------------------------------------------------------X

Plaintiff, Julia Hampton, by her attorneys, Ballon Stoll Bader & Nadler,

P.C., complaining of defendant New York City Human Resources Administration

("HRA"), alleges upon information and belief:

1.      This action is brought to remedy defendant's intentional creation of

a hostile working environment, unlawful discrimination, unlawful harassment,

unlawful retaliation and unlawful constructive termination of plaintiff's

employment, based on plaintiff's age and disability, in violation of the Americans

with Disability Act of 1990 (ADA), 42 U.S.C. § 12122 *et seq.*; Age Discrimination

in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*;  Executive Law of the State

of New York, New York State Human Rights Law ("Executive Law"), § 296, *et*

*seq*, and the Administrative Code of the City of New York, New York City Human

Rights Law ("Administrative Code"), § 8-101, *et seq.*

## JURISDICTIONAL BACKGROUND

2.      Plaintiff, Julia Hampton ("plaintiff" and/or "Hampton"), is a sixty two

(62) year old, disabled female suffering from dyslexia.

3.      Plaintiff's date of birth is March 8, 1946.

1

4.      Plaintiff is a "person" within the meaning of the Executive Law § 292(1), and within the meaning of the Administrative Code § 8-102(1).

5.      Plaintiff resides at 780 Concourse Village, Bronx, NY.

6.      Defendant is a domestic corporation, doing business in the state of New York, with its main office at 180 Water Street, New York, NY.

7.      Defendant Verizon is an "employer" within the meaning of Americans with Disability Act of 1990 (ADA), within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it has more than fifteen (15) persons in its employ in New York City.

8.      At all relevant times herein, plaintiff was employed by defendant, until plaintiff was constructively discharged from her employment on March 20, 2008.

### FACTS

9.      Plaintiff had a learning disability since an early age and was put into a special education class in elementary school.

10.     Plaintiff's employment with defendant began on or about April 12, 1982 as an Eligibility Specialist III in the Family Assistance Unit.

11.     At the commencement of her employment plaintiff did not take any Civil Service exams and was working out of title, as were most employees in the 1980s.

12.     In 1984 Plaintiff took and passed the Civil Service exam for an office aid, but remained in her position of Eligibility Specialist III.

13.     In 1987 plaintiff took and passed the Civil Service exam for an Eligibility Specialist.

14.     Plaintiff's job functions as an Eligibility Specialist III included interviewing clients, assisting clients in filling out applications, collecting supporting documentation from clients and determining clients' eligibility for public assistance, food stamps and Medicaid and speaking sign language, when required.

15.     Plaintiff learned the sign language and in or about 1995 represented HRA in a fair at the school for the deaf to introduce the people in attendance to services offered by HRA.

16.     During her tenure as an Eligibility Specialist III in the Family Assistance Unit, plaintiff received positive reviews, and her supervisors pointed out any errors she may have made and gave her time to correct them, without writing her up.

17.     In 2001, a new job title was developed called Job Opportunity Specialist ("JOS").

18.      The JOS had many of the same job functions as an Eligibility Specialist III, but also required the JOS to refer clients to job cites.

19.     All Eligibility Specialists were given the option of switching their title to JOS.  Plaintiff was one of the people who accepted the change in title.

20.     In 2001 District Council 37, plaintiff's union referred plaintiff to dyslexia unit and plaintiff was diagnosed with dyslexia.

21.     In 2003 plaintiff took and passed the Civil Service Exam for JOS.

22.    At its inception in 2001, JOS was a newly created position and was not represented by a union.  Three (3) unions competed to get representation for the position.  One was Local 1549, which represents clerical workers, the other, was Local 371 which represents social workers, and a third, Local 1180.

23.    Until the resolution of the dispute between the unions all those in JOS title were to remain with their local union.

24.    Plaintiff is a member of District Council 37 and belongs to local 1549.

25.    Local 1549 offers various courses, including courses for people suffering from dyslexia.  Starting in or about 2001 plaintiff began attending courses for people with dyslexia.

26.    In 2003 plaintiff decided to complete her college education. Previously, she was expelled from College of New Rochelle for not maintaining the minimum required grade point average.

27.    In order to be eligible to return to the College of New Rochelle, plaintiff had to explain her low grades.  Plaintiff obtained a letter from her supervisor at HRA, Ms. Phoenix, in which letter Ms. Phoenix stated that plaintiff was dyslexic and would be able to complete course work if provided with extra time.

28.    In or about 2003 HRA offered its employees to enroll in a community college of their choice from the list provided by HRA and HRA would pay the educational expenses as well as provide employees with paid time off to attend college.

4

29.     Plaintiff was asked by her union representatives and HRA management to enroll in a community college pursuant to the HRA program and plaintiff agreed to enroll in Borough of Manhattan Community College ("BMCC") and was enrolled by HRA.  Plaintiff provided HRA with medical documentation relating to her dyslexia to be forwarded to BMCC so that plaintiff would get the extra time necessary to complete her coursework and exams.

30.     While in the Family Assistance Unit, plaintiff was given extra paid time off to do her homework, attend classes and take exams.

31.     In order to complete her associate degree in Human Services at BMCC, plaintiff was required to complete an internship.

32.     Plaintiff, along with other HRA employees, was approved to complete her internship in a different department of HRA and began her internship in August 2005.

33.     The internship required one day of field work and one day to complete field notes, such notes to be submitted to the Internship Supervisor, Ms. Joyce Scott.

34.     The Family Assistance Unit approved plaintiff for two (2) paid days off weekly to complete her field work and field notes.

35.     In April 2005, a determination was reached by the Office of Collective Bargaining that Local 371 would represent all those in the title of JOS. However, Local 371 did not provide any classes for people with dyslexia and plaintiff would not be able to register for classes in September unless she was switched back to Local 1549, which offered the classes.

5

36.     In June 2005 plaintiff asked to be switched back into her old title of Eligibility Specialist III because that would allow her to be represented by her old union, Local 1549, and allow her to attend classes.

37.     The Family Assistance Unit had employees working in both the Eligibility Specialist III title and JOS title.

38.     In order to switch back to her old title, plaintiff was required to produce medical documents substantiating the need for the switch to both the HRA and the Civil Service Board.   The documentation was provided and in September 2005 plaintiff was approved to be switched back to Eligibility Specialist III title.  However, plaintiff was transferred to another department, the HIV/AIDS Service Administration Unit ("HASA").

39.     Plaintiff was to be transferred on September 15, 2005.  However, plaintiff had a scheduled vacation and came back to work on October 6, 2005.

40.     On October 6, 2005 plaintiff came to HASA main office, located on 34th Street in Manhattan and was told by Mr. Waxman, Director of Administration of Employment for the unit, that the Family Unit played a joke on him and he did not have room for an old, disabled individual in his unit and intends to send plaintiff back to the Family Assistance Unit.  At the time this comment was made plaintiff was fifty-nine (59) years old and was suffering from dyslexia.

41.     Plaintiff was told to sit in Mr. Waxman's office, and although she repeatedly asked for work, was provided with no work as Mr. Waxman was determined to send plaintiff back.

42.     On or about November 20, 2005, plaintiff was transferred to a local office of HASA located on 14th Street in Manhattan.

43.     Plaintiff was given no work at the local office.  She was not even given log-in information for her computer.  Plaintiff was told by one of her supervisors, Christine Seabrook, that plaintiff should not work on any cases at HASA because she is a mentally challenged person.

44.     Plaintiff requested that the HASA unit honor plaintiff's schedule and allow her to continue her internship twice a week and attend exams and classes during work hours.  Plaintiff was told by Jane Roder, that plaintiff could not attend her internship or classes during work hours.

45.     Jane Roder insisted that plaintiff do her internship in her free time. However, at that time Elliot Spitzer sent a mandate which stated that HRA employees were to have no client contact outside of work hours without HRA approval.

46.     Plaintiff requested and was not granted permission to have contact with HRA clients outside of work hours in order to complete her internship and was finally approved for one (1) day off for her internship.  Plaintiff was mandated to complete her field notes in her spare time.  However, pursuant to the HRA regulations client files cannot be removed from HRA premises and plaintiff would only be able to complete the work at the office.

47.     Plaintiff was offered help to complete her field notes by her supervisor at HASA unit Ms. Sharon Jordan.  She was also helped by Ms. Grace and Joyce Scott, the internship supervisor.  In order to complete her assignments

7

plaintiff had to stay after her work hours; and she in fact stayed after work hours to complete her assignments.

48.     Between August 2005 and June 2006 plaintiff had to work overtime because of her internship.  Plaintiff was approved for payment of overtime, along with all HRA employees in the internship program, but never received such overtime compensation.

49.     Ms. Jordan required plaintiff to complete personal, menial tasks for Ms. Jordan in exchange for her helping plaintiff with the internship assignments. Plaintiff was sent on various personal errands for Ms. Jordan during the work day, including shopping.

50.     Plaintiff completed her internship in June 2006 and registered for classes for the Fall 2006 semester.

51.     The disability office of BMCC supervises all exams taken by people with disability at BMCC.  The office closes at 7 p.m. during the week and is open on Saturday until 5:00 p.m.  The policy of the disability office is that a disabled student cannot take more than one (1) exam per day.  Since plaintiff was enrolled in several classes, plaintiff needed time off from work to be able to take her exams.  However, such time off was not approved.

52.     Jason Luch, Assistant Director of BMCC's disability office, wrote a letter to HRA requesting that plaintiff be given time off during the day to take exams.  Such time off was never approved by HRA and BMCC was forced to pay its employees overtime to administer exams on Sunday to accommodate plaintiff.

53.     In or about June 2006, Richard Place, a social worker, faxed a letter to Verna Eggleston, Commissioner of HRA, confirming plaintiff's diagnosis of Dyslexia and asking that plaintiff be provided reasonable accommodation in the form of extra time to complete tasks and paid time off to take exams during work hours, the accommodations previously provided to Ms. Hampton by the Family Assistance Unit.

54.     In or about July 21, 2006, plaintiff approached Ms. Eggleston during a convention being held at the Jacob K. Javits Convention Center to request reasonable accommodation.   The commissioner requested that Ms. Hampton hand in her request at the Commissioner's office and Ms. Hampton handed a letter with a request for accommodation, as well as a letter confirming her diagnosis of Dyslexia to Ms. Eggleston's secretary.

55.     When given substantive assignments at HASA, plaintiff was not given sufficient time to complete them.   Plaintiff requested on numerous occasions that her disability be accommodated and she be given extra time to complete tasks.  Plaintiff's requests were ignored.

56.     However, reasonable accommodation was given to a white, blind individual.  The accommodation included special equipment as well as extra time to complete assignments.

57.     While at HASA, plaintiff was limited in the amount of substantive work she was given.  Plaintiff was told on numerous occasions to shred paper because that's all she is good for and that is all disabled people should do.

9

58.    On or about March 13, 2006 Ms. Seabrook called plaintiff "stupid and dumb" because plaintiff had trouble processing checks on the HRA computer system.

59.    On or about March 13, 2006, Ms. Jordan further discriminated against Ms. Hampton by assigning her, and no other Eligibility Specialist to shred documents and take out garbage continuously for several days.  Plaintiff was told by Jordon that this is the job for mentally challenged workers.

60.    Plaintiff was further discriminated against by being required to complete assignments without a computer access, which gives users the ability to more easily check their work.  The lack of access to a computer required plaintiff to stay late, time for which she never got compensated.

61.    Plaintiff complained because she was discriminated against based on her age and dyslexia and because in 2001 she was diagnosed with a skin condition, where large amounts of dust would cause her skin to break out in a rash.

62.    Plaintiff brought in documentation to her supervisor and requested that her time shredding paperwork be limited.  Plaintiff's request was not honored.

63.    Plaintiff was told on numerous occasions by HASA Director John Maher, Deputy Director, Ms. Jordan, and her supervisor, Ms. Seabrook that they did not want Ms. Hampton, a disabled individual, working on cases in their unit.

64.    In or about August 24, 2006, plaintiff was notified by Leon Rozenbaum of Human Resources that Plaintiff was scheduled to see a

10

psychiatrist. When Plaintiff inquired as to why she was mandated to see a psychiatrist she was told by Mr. Rozenbaum that Human Resources randomly selects people with disabilities to be seen by a psychiatrist. Moreover, she was told that if she does not see the doctor, she will be fired.

65.     In or about August 25, 2006, plaintiff went to her union to inquire about the mandatory appointment. When Mr. Perez, her union representative, contacted Mr. Rozenbaum, he was told that this was a decision made by Human Resources without any further elaboration.

66.     On or about August 29, 2006, plaintiff appeared for the mandatory appointment to ensure her job security. When plaintiff arrived, she was told by the receptionist to be seated and wait for a supervisor.

67.     While plaintiff was waiting in the reception area of HRA for her mandatory appointment. An individual by a name of Robert Spain approached the receptionist, and loudly introduced himself as a psychiatrist who was there to see Julia Hampton. The receptionist pointed to Ms. Hampton and said in a loud voice "Mr. Hampton, the patient is over there."

68.     Plaintiff states the above conduct by both the psychiatrist and the receptionist was unprofessional, derogatory and was done with intent to harass her.

69.     Plaintiff asked Dr. Spain for his license or some other identification proving that he is, in fact, a medical professional, as the doctor's appearance was not professional (he was wearing jeans). Dr. Spain produced none, stating

that none was available and offered Ms. Hampton a sticky note with his name, phone number and license number, which plaintiff later learned was incorrect.

70.    A few minutes later, Mr. Bruce Himelfarb, an HRA supervisor, appeared and plaintiff, together with Mr. Spain, was escorted by Ms. Himelfarb to an unsecured room for conducting plaintiff's evaluation. However, due to Dr. Spain's appearance and conduct, plaintiff felt uncomfortable and wanted to rise to her feet. At this time Mr. Spain fondled plaintiff from her breasts to her waist without any explanation for his conduct.

71.    Plaintiff reported this inappropriate behavior and the assault immediately to both her union, through Clerical Director, Eddie Gates, and to HRA, through Sharon Jordan, HASA Deputy Director, but no actions were taken. No investigation of the charges was conducted and neither the doctor nor the supervisor who forced plaintiff to see the doctor were penalized or reprimanded. What is more, Ms. Jordan actually told plaintiff that she doesn't have time for this.

72.    In or about September 14, 2006, plaintiff was brought up on charges of insubordination.

73.    Upon information and belief, plaintiff was brought up on charges in retaliation for her complaints regarding the assault on her by Dr. Spain and because she requested a reasonable accommodation in the amount of shredding she was required to do as well as extra time to complete assignments.

74.    The charges were sustained and plaintiff was demoted to an Eligibility Specialist I.

75.    In 2007 Local 371 and the HRA agreed on a salary increase for all those in the JOS title, which increase would be retroactive to the date of employees' transfer into the JOS title.

76.    Upon information and belief, plaintiff is the only HRA employee in JOS title who did not receive the back pay associated with the change in title.

77.    In early 2008, plaintiff was told that if she did not retire she would be brought up on more charges.  Thus, plaintiff was forced into early retirement on March 20, 2008.

### FIRST CAUSE OF ACTION
### (Discrimination Based Upon Age in Violation of ADEA)

78.    Plaintiff realleges all prior allegations.

79.    HRA violated ADEA, 29 U.S.C. § 621 *et seq.* by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's age was the motivating, if not the only, factor.

80.    As a result of the foregoing, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of ADEA)

81.    Plaintiff realleges all prior allegations

82.    HRA created a hostile work environment in that, in violation of ADEA, when it engaged in, perpetuated and permitted its decision makers to

13

engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

83.     As a result of HRA's failure to alleviate or remedy the harassing conduct and discriminatory behavior plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of ADEA)

84.     Plaintiff realleges all prior allegations as though fully set herein.

85.     HRA retaliated against plaintiff for voicing her complaints by filing charges of insubordination against plaintiff, denying her overtime wages she was entitled to, demoting plaintiff and ultimately forcing plaintiff to retire.

86.     As a result of HRA's conduct plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### FORTH CAUSE OF ACTION
### (Discrimination Based Upon Disability in Violation of ADA)

87.     Plaintiff realleges all prior allegations.

88.     HRA violated ADA, 42 U.S.C. § 12122 *et seq.* by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's disability was the motivating, if not the only, factor.

89.   As a result of the foregoing, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of ADA)

90.   Plaintiff realleges all prior allegations

91.   HRA created a hostile work environment in that, in violation of ADA, when it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

92.   As a result of HRA's failure to alleviate or remedy the harassing conduct and discriminatory behavior plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of ADA)

93.   Plaintiff realleges all prior allegations as though fully set herein.

94.   HRA retaliated against plaintiff for voicing her complaints by filing charges of insubordination against plaintiff, demoting plaintiff and ultimately forcing plaintiff to retire.

95.   As a result of HRA's conduct plaintiff has lost and will lose wages and benefits she would have obtained from said position; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## SEVENTH CAUSE OF ACTION
### (Discrimination Based on Age [New York State Claim])

96.    Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

97.    Defendant HRA discriminated against plaintiff in violation of New York State Human Rights Law, Executive Law § 296(1) by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's age was the motivating, if not the only, factor.

98.    As a result of Defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## EIGHTH CAUSE OF ACTION

### (Hostile Work Environment Based on Age [New York State Claim])

99.    Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

100.   Defendant HRA created a hostile work environment in violation of New York State Human Rights Law, Executive Law § 296(1)(a) when it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

16

101.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## NINTH CAUSE OF ACTION

### (Discrimination Based on Disability [New York State Claim])

102.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

103.   Defendant HRA discriminated against plaintiff in violation of New York State Human Rights Law, Executive Law § 296(1) by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's disability was the motivating, if not the only, factor.

104.   As a result of Defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## TENTH CAUSE OF ACTION
### (Hostile Work Environment Based on Disability [New York State Claim])

105.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

106.   Defendant HRA created a hostile work environment in violation of New York State Human Rights Law, Executive Law § 296(1)(a) when it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

17

107.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## ELEVENTH CAUSE OF ACTION
### (Retaliation [New York State Claim])

108.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

109.   Defendant retaliated against plaintiff in violation of New York State Human Rights Law, Executive Law § 296 when plaintiff voiced her complaints by filing charges of insubordination against plaintiff, demoting plaintiff and ultimately forcing plaintiff to retire.

110.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

## TWELFTH CAUSE OF ACTION
### (Constructive Discharge Based on Age and Disability [New York State Claim])

111.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

112.   Defendant constructively discharged plaintiff, based on age and disability, when it created intolerable working conditions forcing plaintiff to resign by failing to alleviate the discrimination and hostile work environment, in violation of the New York State Human Rights Law § 296, *et seq.*

113.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### THIRTEENTH CAUSE OF ACTION
### (Discrimination Based on Age [New York City Claim])

114.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

115.   Defendant HRA discriminated against plaintiff in violation of New York City Administrative Code § 8-101, *et seq* by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's age was the motivating, if not the only, factor.

116.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### FORTEENTH CAUSE OF ACTION
### (Hostile Work Environment Based on Age [New York City Claim])

117.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

118.   Defendant HRA created a hostile work environment in violation of New York City Administrative Code § 8-101, *et seq.* when it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

119.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### FIFTEENTH CAUSE OF ACTION
### (Retaliation [New York City Claim])

120.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

121.   Defendant retaliated against plaintiff by demoting plaintiff, denying her overtime, and forcing her into retirement when it threatened to continue bringing her up on charges of misconduct and insubordination, and constructively discharging plaintiff, in violation of New York City Administrative Code § 8-101, *et seq.*

122.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### SIXTEENTH CAUSE OF ACTION
### (Constructive Discharge Based on Age and Disability [New York City Claim])

123.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

124.   Defendant constructively discharged plaintiff, based on gender, when it created intolerable working conditions forcing plaintiff to resign by failing to alleviate the discrimination and hostile work environment created by defendant, in violation of the New York City Administrative Code § 8-101, *et seq.*

125.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### SEVENTEENTH CAUSE OF ACTION
**(Discrimination Based on Disability [New York City Claim])**

126.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

127.   Defendant HRA discriminated against plaintiff in violation of New York City Administrative Code § 8-101, *et seq* by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which plaintiff's disability was the motivating, if not the only, factor.

128.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### EIGHTEENTH CAUSE OF ACTION
**(Hostile Work Environment Based on Disability [New York City Claim])**

129.   Plaintiff repeats, reiterates and realleges all prior allegations as though fully set forth herein.

130.   Defendant HRA created a hostile work environment in violation of New York City Administrative Code § 8-101, *et seq.* when it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

21

131.   As a result of defendant's discriminatory practices, plaintiff has lost and will lose wages and benefits; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

**WHEREFORE**, plaintiff demands judgment against defendant

A)  On each claim for compensatory damages not less than $1,000,000 (One Million Dollars) and reasonable attorneys' fees; and

B)  For costs, disbursements and such other and further relief as this Court deems proper.

Dated:  New York, New York
        September 4, 2008

BALLON STOLL BADER & NADLER, P.C.

By: _____
    Marshall B. Bellovin (5508)
    729 Seventh Avenue, 17th Floor
    New York, NY 10019
    (212) 575-7900

O:\BELLOVIN\HAMPTON\002\complaint 9 4 08.doc

22